## BLANKENSHIP et al. v. LUSK et ux.
### No. 1530.

Court of Civil Appeals of Texas. Waco.

Nov. 22, 1934.

Phillips, Trammell, Chizum, Price & Estes, of Fort Worth, J. B. Dudley, of Oklahoma City, Okl., C. L. Orn, of Fort Worth, and Seale & Seale, of Centerville, for appellants.

W. D. Lacey, of Centerville, for appellees.

ALEXANDER, Justice.

G. L. Lusk and wife, Annie Lusk, executed and delivered to G. T. Blankenship a mineral deed conveying to him one-eighth of the oil, gas, and other minerals in a certain 202⅔ acre tract of land owned by the grantors, and, as a part of the same transaction, said grantors executed and delivered to the Farmers' Royalty Holding Company a mineral deed conveying to it three-eighths of the oil, gas, and other minerals in the same tract of land. Later said grantors filed two separate suits, one against Blankenship and the other against the Farmers' Royalty Holding Company, to cancel said conveyances. The two suits were consolidated, and, upon a trial before the court without a jury, judgment was entered for plaintiffs canceling said deeds. The defendants appealed.

The facts in this case are substantially the same as those in the case of Blankenship v. Stricklin (Tex. Civ. App) 77 S.W.(2d) 339, this day decided. The evidence shows that the Farmers' Royalty Holding Company was a corporation. Blankenship, its president, was engaged in securing conveyances of mineral rights to the corporation for which stock in the corporation was exchanged. In keeping with his general scheme of operation, Blankenship, through his agent, induced Lusk and his wife to enter into a written contract to employ him to assist them in pooling their land with said corporation, and in consideration therefor they conveyed to him one-eighth of the minerals in the tract of land in question. At the same time, and as a part of the same transaction, Lusk and wife were induced to execute a conveyance of three-eighths of the minerals in the same land to the corporation, and in consideration therefor the grantors received three-eighths of a share of stock in the corporation for each acre of land included in the conveyance.

The plaintiffs sought to cancel said conveyances on account of certain false representations, alleged to have been made by the defendant's agent at the time of securing said conveyances, as to the nature of the property owned by said corporation and included in the pool and the dividends that would be paid to the holders of stock in the corporation. The trial court found that the representations were made by the defendant's agent as alleged, and that as a result the plaintiffs were entitled to have said conveyances canceled. The plaintiffs, however, did not allege nor prove the value of the mineral rights conveyed by them to the defendants nor the value of the corporate stock received by them in exchange therefor. The trial court found that the stock received by the plaintiff was worthless, but there was no evidence whatever introduced to support such finding. The rule in this state is settled that the equitable remedy of cancellation or rescission is not available because of fraudulent representations made to induce the execution of a contract, unless it is shown in connection therewith that some injury or damage has resulted to the party claiming to be aggrieved. Bryant v. Vaughn (Tex. Sup.) 33 S.W.(2d) 729, par. 1; Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1; Baden v. Deragowski (Tex. Civ. App.) 7 S.W. (2d) 123, 124; Lane v. Cunningham (Tex. Com. App.) 58 S.W.(2d) 35; Files v. Spencer (Tex. Civ. App.) 62 S.W.(2d) 161; Federal Mortgage Co. v. Henslee (Tex. Civ. App.) 43 S.W.(2d) 609, par. 2. Since the plaintiffs wholly failed to prove that the corporate stock received by them in consideration for the conveyances sought to be canceled was of less value than the mineral rights conveyed by them, they were not entitled to have the mineral deeds canceled on account of the alleged fraud.

The plaintiffs alleged that the property included in the two conveyances was their homestead, and that each of said conveyances was void because the wife's acknowledgment thereto was not taken privily and apart from her husband. It was further alleged that defendant's agent was present when the acknowledgments were taken and knew that the wife was not examined privily and apart from her husband. The trial court found the facts as alleged. The defendants challenged the sufficiency of the evidence to support the court's finding on this issue. Annie Lusk, the wife, testified on direct examination that she and her husband and the defendant's agent were together

in the kitchen when the two deeds were signed; that the notary asked her and her husband if they knew what they were doing, and, upon receiving an answer in the affirmative, he took the papers and went away, and that she did not talk with him any more that day. On cross-examination she testified as follows: "Q. Mr. Gresham's (the notary's) name is here on the back of this instrument, and he says, in substance, that he took you apart and examined you away from and privily from your husband about this instrument and took your acknowledgment separate from your husband, he did that? A. If he got it written that way he ought to know what he is talking about." G. L. Lusk testified on direct examination substantially as did his wife. On cross-examination he testified as follows:

"Q. Gus, do you say that Mr. Gresham did not examine your wife apart from you about this instrument? A. We were all right there together.

"Q. Did Mr. Gresham—will you tell this court that he did not take your wife out of your presence, and apart from you, and examine her about this instrument? A. Not when we signed it.

"Q. Did he do it afterwards, if he did it was it after you all signed it? A. Yes sir.

"Q. You won't say that he didn't do it sometime or other? A. No sir, but when we signed it we were all together."

Defendant's agent testified that he was not present when Annie Lusk's acknowledgment was taken. The notary testified that he examined the wife privily and apart from the husband in the manner provided by law, and that neither the husband nor defendant's agent was present when the wife's acknowledgment was taken. He testified that he took the acknowledgment in the kitchen, and that, when he walked out of the house, the husband and defendant's agent were standing on the porch. The notary's certificate was in statutory form.

It is said that there is a decided judicial tendency to view with suspicion and distrust attempts to discredit certificates of acknowledgments, and, where it is shown that the party whose acknowledgment is supposed to have been taken actually appeared before the notary for the purpose of acknowledging the instrument, and the notary has placed his certificate thereon in statutory form, the evidence, in order to impeach such certificate, must be clear, cogent, and convincing, beyond reasonable controversy. It is further said that the testimony of the par-

ty whose acknowledgment is purported to be certified, when unsupported by other evidence, or only slightly corroborated, is insufficient to overcome the notary's certificate. 1 Tex. Jur. 601; 1 C. J. 896; 1 R. C. L. 207; Cockerell v. Griffith (Tex. Civ. App.) 255 S. W. 490. The Commission of Appeals recognized the doctrine announced in the foregoing authorities and announced its adherence thereto in the case of Robertson v. Vernon (Tex. Com. App.) 12 S.W.(2d) 991. See, also, Ward v. Weaver (Tex. Com. App.) 34 S.W.(2d) 1093.

■ The evidence introduced by plaintiffs in support of the issue here under consideration discloses its own weakness. Neither the husband or wife would testify positively that the wife was not examined privily and apart from her husband. Each of them admitted, in effect, that she might have been so examined. On the other hand, the truth of the matters contained in the certificate is corroborated by the positive testimony of the notary who made it. Under these circumstances, we are of the opinion that the evidence on this issue is insufficient to support the judgment appealed from.

■ It is proper to note also that, if we should conclude that the evidence was sufficient to support the findings of the trial court and that the acknowledgment of the wife was not properly taken, this would affect the title to only 200 acres of the land conveyed; that being the maximum amount that plaintiffs could claim as a homestead. The deeds included 202⅔ acres, and plaintiffs made no attempt to designate what part of the larger tract they would claim as exempt property. Presumably the land was community property, and, if so, the husband could convey the excess over the homestead exemption without the joinder of the wife.

The judgment of the trial court is reversed, and the cause remanded for a new trial.