**McRAE EXPLORATION & PRODUCTION, INC., et al., Appellants,**

v.

**The RESERVE PETROLEUM COMPANY, et al., Appellees.**

**No. 10–97–100–CV.**

Court of Appeals of Texas, Waco.

Feb. 11, 1998.

Geoffrey H. Bracken, James G. Munisteri, and Stacy R. Obenhaus, Gardere, Wynne, Sewell & Riggs, L.L.P., Houston, for McRae Exploration & Production, Inc.

Percy L. Wayne Isgitt, Houston, for appellants Gulf Tide Oil Co., Richard B.Beard and Robert Killian.

Maria Teresa Arguindegui, Haynes & Boone, L.L.P., Dallas, Benjamin H. Davidson, II, Haynes & Boone, L.L.P., Houston, for appellees.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

This appeal is from a trespass to try title suit involving mineral interests in which the jury found that the grantees in a later-in-time deed were bona fide purchasers. Based on those findings, the court awarded them a clear title to the interests in question.

## HISTORICAL FACTS

Gus and Annie Lusk owned all of the minerals under a tract of land in Leon County. In 1922, they signed a mineral deed in favor of G.W. Walker and R.G. Walker ("the Walker deed") covering one-half their interest. The Walkers did not record the deed until 1939.[1]

In the meantime, in 1930, the Lusks signed another deed covering a one-half interest in favor of T.H. Thompson, who did record his deed contemporaneously. That interest is not involved in this litigation. In 1931, they signed two more deeds, one to Farmers Royalty Holding Company ("Farmers") and one to G.T. Blankenship ("Blankenship"). These deeds were also recorded prior to the recording of the Walker deed.[2]

In the 1930s, Farmers and Blankenship began to acquire mineral interests in exchange for stock in Farmers. The overall idea was to pool diverse mineral interests into a company so that all owners would share in the production obtained from any property, no matter where located. According to the record, the number of shareholders reached 1700–1800. The Lusks received Farmers stock for the interests conveyed to Farmers and Blankenship.[3]

It is undisputed that some of Farmers' interests were acquired in a fraudulent manner, such as deeds signed in blank, property descriptions left blank, and descriptions that included more interest than the grantors intended. Some landowners complained and

---

1. Appellants, McRae Exploration & Production, Inc., The Gulf Tide Oil Company, Richard B. Beard, and Robert Killian claim under this deed.

2. Appellees, Reserve Petroleum Company and Lochbuie Limited Partnership, claim under these deeds. In fact, Farmers later became Reserve.

3. We will refer to the exchange of deeds for stock as the "Lusk–Farmers transaction."

some, like the Lusks, filed suit. Farmers settled with some owners by reconveying the interests obtained. Other claims were litigated.[4] The Lusks were successful at trial on claims that they were fraudulently induced into entering the transactions, but the case was overturned by this court in 1934 and remanded to the trial court for another trial. *Blankenship v. Lusk*, 77 S.W.2d 341 (Tex.Civ.App.—Waco 1934, no writ). Nothing further ever happened in the case.

In two reported cases decided in 1936 by the Beaumont Court of Civil Appeals, Farmers lost its interests because the deeds by which it had acquired them included no description of the property and the law then governing acknowledgments by married women rendered the transactions void. *See Farmers Royalty Holding Co. v. Alderman*, 94 S.W.2d 261 (Tex.Civ.App.—Beaumont 1936, no writ); *Farmers Royalty Holding Co. v. Ashmore*, 94 S.W.2d 262 (Tex.Civ. App.—Beaumont 1936, no writ).

### THE DISPUTE

In 1987 and 1988, Appellees entered into operating agreements that included the Lusk property. The purpose of the agreements was to drill wells and produce oil and/or gas. Although a title opinion stated that Appellants owned the disputed interests, Appellees continued with the operations and, after drilling was successful, filed this suit to determine title to the interests.[5]

At trial the primary issue was whether Appellees' predecessors were bona fide purchasers of the interests conveyed to them while the Walker deed remained unrecorded. The jury determined that both Farmers and Blankenship purchased their interests "for valuable consideration and without notice of the earlier Walker deed." The jury also found: (1) Appellees were good faith trespassers when they entered the property to develop it; and (2) the reasonable development costs incurred by Appellees totaled $352,930.77. When asked if the value of Farmers stock was "fully and fairly litigated and essential to the judgment" in either the *Alderman* or the *Ashmore* suit, the jury said "no." Based on these findings, the court signed a judgment awarding full legal and equitable title to the interests to Appellees, declaring the Walker deed void as to the interests conveyed in the Lusk–Farmers transaction, and awarding $98,000 in attorney's fees to Appellees.[6]

On appeal, Appellants assert that the court erred in:

- granting Appellees' motion for judgment on the verdict;
- denying their motions for a directed verdict and judgment notwithstanding the verdict; and
- denying their motion for a new trial.

These points were briefed and argued together, along with points asserting:

- the evidence is legally or factually insufficient to support the jury's answers that Farmers and Blankenship purchased their interests for valuable consideration and without notice of the earlier Walker deed and
- the evidence conclusively establishes that the *Alderman* and *Ashmore* suits collaterally estop the Appellees from asserting that Farmers stock had value when exchanged for the interests Farmers and Blankenship acquired.

As an alternative to their estoppel theory, Appellants assert:

- the jury's failure to find that the value of Farmers' stock was fully and fairly litigated and essential to the judgment in the two earlier cases was so against the weight and preponderance of the evidence as to be manifestly unjust.

---

4.  Mason McLain, President of Reserve, testified that Farmers "won about as many as [it] lost, or maybe even a little more."

5.  Several other people and entities were parties also. Some were dismissed prior to trial, some had default judgments taken against them, some agreed to be bound by the judgment, and some were represented at trial by an attorney ad litem.

6.  The judgment also resolved other questions, such as title to another fractional interest in dispute, a counterclaim for title based on adverse possession, attorney's fees for the attorney *ad litem*, and interest on funds held in suspense during the dispute. None of these issues is before this court.

We will review all these assertions (Appellants' first six points) together.

In additional points, Appellants attack:

- the legal and factual sufficiency of the evidence to support the finding that Appellees were good faith trespassers and
- the basis for the award of attorney's fees.

Our review will reveal that (1) as a matter of law Appellants cannot prevail on their collateral estoppel theory, (2) the evidence is legally and factually sufficient to support the jury's determination concerning the bona fide nature of Farmers' and Blankenship's purchases, (3) the finding that Appellees were good faith trespassers is immaterial to the court's judgment, and (4) the court should not have awarded attorney's fees. Thus, after reforming the judgment to delete the attorney's fees, we will affirm it.

## COLLATERAL ESTOPPEL

The primary thrust of Appellants argument on their first six points is the doctrine of collateral estoppel. That is, they assert that the *Alderman* and *Ashmore* judgments determined that Farmers' stock had no value and those determinations bar Appellees from relitigating the issue in this case. Thus, they say, because that issue had been conclusively established against Appellees, the findings that they were bona fide purchasers cannot stand.

The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994). Collateral estoppel is more narrow than res judicata in that it only precludes the relitigation of identical issues of fact that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Id.* (citing Restatement (Second) of Judgments Sec. 27 (1982)). Thus, unlike the broader res judicata doctrine, a collateral estoppel analysis does not focus on what could have been litigated, but only on what was actually litigated and essential to the judgment.

The requirements of a successful claim of issue preclusion are "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Mutuality is not required for the invocation of collateral estoppel; rather, it is only necessary that the party *against* whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990).

The applicability of the doctrine of collateral estoppel to a particular judgment is a question of law. *Martin v. United States Trust Co.,* 690 S.W.2d 300, 307 (Tex.App.— Dallas 1985, writ ref'd n.r.e.).

Appellants rely on the *Alderman* and *Ashmore* suits. They point to the pleadings in the prior cases asserting that Farmers' stock was worthless and language in the *Alderman* opinion that "other grounds" pled by the Aldermans had been "found by the [trial] court in their favor" as confirming findings that Farmers' stock was worthless. *See Alderman,* 94 S.W.2d at 262.

Appellees, however, point to the published decisions as showing that the issue of the value of Farmers' stock was neither fully litigated nor essential to the judgments in favor of the Aldermans and the Ashmores. The Beaumont Court held the deeds were rendered void by the fact that Mrs. Alderman and Mrs. Ashmore, as married women whose acknowledgments were required separately from the acknowledgments of their husbands, signed deeds involving their homesteads without property descriptions. *Alderman,* 94 S.W.2d at 261–62; *Ashmore,* 94 S.W.2d at 263.

In our view, the Beaumont Court's opinion in *Alderman* confirms .that the value of the stock was neither fully litigated nor essential to the judgments canceling the deeds.[7] *Alderman*, 94 S.W.2d at 262. Thus, Appellants cannot avail themselves of the doctrine of collateral estoppel to defeat Appellees' claims. *See Bonniwell*, 663 S.W.2d at 818.

In a post-submission brief, Appellants urge that *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998), supports their position.[8] We disagree. *Kenneco* says that fact-findings supporting alternative holdings can be the basis for issue preclusion only when they are "appealed and affirmed." *Id.* at 522. As we have pointed out, the Beaumont Court did not review the Alderman's and Ashmore's assertions, found in their favor in the trial court, that Farmers' stock had no value. *Alderman*, 94 S.W.2d at 262 ("We pretermit a discussion of the other grounds of validity pleaded by [the Aldermans] and found by the court in their favor.").

Because application of the doctrine is a question of law, we do not address the conclusively-established point nor the factual-sufficiency-of-the-evidence point in connection with the jury's failure to find that the stock's value was fully and fairly litigated in the prior proceedings and essential to those judgments. *See C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966) (A special issue is immaterial when (1) it should not have been submitted; or (2) though properly submitted it has been rendered immaterial by other findings.).

**BLUE SKY LAWS**

Appellants also assert that their first six points should be sustained because the Lusk-

Farmers transaction violated Texas securities laws in effect at the time.

In 1931 Texas law prohibited the sale of securities without a "Blue Sky" permit issued by the Secretary of State. Act of June 4, 1923, 38th Leg., R.S., ch. 52 § 9, 1923 Tex. Gen. Laws 114, 117, *repealed by* Act of April 25, 1935, 44th Leg. R.S., ch. 100 § 38, 1935 Tex. Gen. Laws 255, 280. The Secretary of State issued permits to Farmers and Blankenship, numbers 976a and 976 respectively. The permits allowed the holders to exchange shares of Farmers' stock for royalty interests but prohibited them from receiving "commissions or other incidental or promotion expenses."

Pointing to *Schlittler v. Smith*, 128 Tex. 628, 630, 101 S.W.2d 543, 544 (1937), as showing that the Supreme Court recognized a distinction between the two types of interests, Appellants argue that the Lusks conveyed "mineral interests" rather than "royalty interests" allowed by the permits. They reason that, because the transactions were illegal, the consideration was illegal and therefore constituted no consideration at all.

Appellees say that Appellants ignore authority which has directly addressed this argument. First, they point out that the first Blue Sky Laws were repealed in 1935, when a new "Securities Act" was adopted. Tex. Rev.Civ. Stat. Ann. art. 600a, § 38 (Vernon 1935). Next, they point to *Royalty Pooling Co. v. Rogers*, 300 S.W.2d 665 (Tex.Civ. App.—Amarillo), *rev'd on other grounds*, 157 Tex. 304, 302 S.W.2d 938 (1957),[9] as dispositive. In *Rogers*, the landowner had conveyed mineral interests to G.T. Blankenship and Royalty Pooling Company in exchange for stock. Rogers contended that the transactions were void because neither Blankenship nor Royalty held a Blue Sky permit. The Amarillo Court reversed a summary judgment for Rogers for two reasons. It relied

7. We discuss *Alderman* more than *Ashmore* because the *Ashmore* opinion simply adopts the reasoning of *Alderman*. The pleadings and judgments in the two cases were identical. *Ashmore*, 94 S.W.2d at 262.

8. As of the date of our opinion, the Supreme Court has not released the opinion for publication.

9. The Supreme Court held that the court of appeals should have reversed the judgment and remanded the cause rather than rendering judgment against Rogers. *Rogers v. Royalty Pooling Co.*, 157 Tex. 304, 302 S.W.2d 938 (1957) (per curiam).

on an earlier case decided by the Fifth Circuit, *Ham v. Blankenship,* 194 F.2d 430 (5th Cir.1952), to hold the transactions voidable rather than void. *Rogers,* 300 S.W.2d at 666–67. But it also held that in repealing the former statute the Legislature intended to protect only certain enumerated claims. *Id.* at 667. The Court noted that if a right to recover depends entirely upon a statute, its repeal deprives the court of jurisdiction over the subject matter. *Id.*

■ A distinction between Appellants' arguments and those advanced by Rogers is that here the grantees held permits and in the former case the grantees held no permits.[10] We believe that this is a distinction that makes no difference. Appellants themselves argue that the Lusk–Farmers transaction was made in violation of or outside the authority granted by Appellees' permits, and the Amarillo Court addressed that:

> The negotiations and transactions had by the parties here involved which resulted in the execution of the contract and mineral deeds in question were not had or performed in compliance with or in pursuance of the provisions of the Blue Sky Law, hence we find no saving clause for protection for them or either of them in the repealing act.

*Id.*

The Blue Sky issue has been decided adversely to Appellants.

## LEGAL AND FACTUAL SUFFICIENCY

Although Appellants do not separately address their point concerning the legal and factual sufficiency of the evidence to support the jury's findings that Farmers and Blankenship purchased their interests for valuable consideration and without notice of the earlier Walker deed, Appellees address the evidence at some length. We will summarize the reasons why we find the evidence sufficient.

Appellants' "no-evidence" point challenges the legal sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding. We must overrule the challenge if we find, considering only evidence and inferences which support the finding in the light most favorable and disregarding evidence and inferences to the contrary, any probative evidence that supports the finding. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex. 1993). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.*

Their "insufficient-evidence" point challenges the factual sufficiency of the evidence to support the finding. We must overrule it unless a review of all the evidence, both for and against the finding, demonstrates that it is clearly wrong and manifestly unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

Under the recording statutes, a bona fide purchaser must give value to be protected from prior unrecorded conveyances. TEX. PROP.CODE ANN. § 13.001(a) (Vernon 1984 & Supp.1997). The statute provides:

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

*Id.* This statute, through various transmutations in enumeration, has been a part of our jurisprudence since before Texas was a state. *Gibralter Sav. Ass'n v. Martin,* 784 S.W.2d 555, 557 (Tex.App.—Amarillo 1990, writ denied).

■ It is undisputed that the Walker deed remained unrecorded at the time of the Lusk–Farmers transaction. Thus, this issue turns on whether the evidence supports the finding that Farmers and Blankenship gave "valuable consideration." Valuable consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, loss, or responsibility given, suffered or undertaken by the other. *See Solo-*

---

10. We cannot tell from the record if the G.T. Blankenship involved there is the same individual involved here. Assuming that he was, we know that the Rogers deed was given on May 21, 1926, before the date of the permit described herein—May 18, 1931.

*mon v. Greenblatt,* 812 S.W.2d 7, 15 (Tex. App.—Dallas 1991, no writ); *Lampkin v. Lampkin,* 480 S.W.2d 35, 37 (Tex.Civ.App.—El Paso 1972, no writ). Although most reported cases discussing stock and consideration involve the value of the consideration paid for the stock, several discuss the concept of issuing corporate stock as valuable consideration in exchange for other types of interests. *See, e.g., Galveston Terminals, Inc. v. Tenneco Oil Co.,* 904 S.W.2d 787, 790 (Tex.App.—Houston [1st Dist.] 1995), *vacated and remanded for settlement,* 922 S.W.2d 549 (Tex.1996) (deed of property in exchange for stock in new subsidiary); *Young v. Fontenot,* 888 S.W.2d 238 (Tex.App.—El Paso 1994, writ denied) (an agreement for an employee to receive stock of a corporation to be formed in consideration for services); *Miller v. K & M Partnership,* 770 S.W.2d 84, 86 (Tex.App.—Houston [1st Dist.] 1989, no writ) (common stock issued solely as consideration for a computer lease); *Bowers Steel, Inc. v. DeBrooke,* 557 S.W.2d 369 (Tex.Civ.App.—San Antonio 1977, no writ) (an oral contract of employment for which the consideration was corporate stock). In determining the value of corporate stock, however, book value is entitled to little, if any, weight, and many other factors must be taken into consideration to determine the value. *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex.1966).

The evidence shows that Farmers was incorporated in Delaware in 1931. Landowners received one share of stock having a par value of $1.00 for each "net mineral acre" conveyed to Farmers. As of December 31, 1931, Farmers had acquired over 91,900 net mineral acres in the states of Texas, Arkansas, Oklahoma, Colorado, and New Mexico. The Lusks received 76 shares, for which stock certificates were issued on October 16, 1931. The company has operated for over 65 years.

Joe Rigsby, a Certified Public Accountant, testifying as an expert witness, said that at the end of 1931, Farmers owned an investment in pooled mineral interests of approximately $98,645.77. He said that the company was attempting to acquire sufficient mineral interests to market to oil and gas companies. The organizers agreed to pay out of their own pockets all of the costs of organizing the company and all of the costs of acquiring the acreage. In his opinion, the Farmers stock held by the Lusks represented an ownership interest in a company with actual assets.

Additionally, the evidence shows that between 1947 and 1963 the Lusks were paid dividends on the stock they held. In 1963, they sold the stock for $3.75 per share.

■ Appellants argue that Appellees' only proof concerning value was the book value of Farmers stock in 1931. We disagree. From the evidence concerning the mineral interests held by Farmers, its proposed plan of operation, the payment of dividends in later years, and the sale of the stock in 1963, the jury could infer that the stock had value when the Lusks acquired it in exchange for part of their mineral interest.[11] We find more than a scintilla of evidence to support the jury's findings that Farmers and Blankenship purchased the interests for valuable consideration.[12] *Reyna,* 865 S.W.2d at 928. Based on all of the evidence we are not persuaded that the findings are clearly wrong and manifestly unjust *Garza,* 395 S.W.2d at 823.

Because the doctrine of collateral estoppel does not apply, the former securities laws do not affect the validity of the Lusk–Farmers transaction, and the evidence supports the jury's findings that Farmers and Blankenship were bona fide purchasers, we overrule points one through six.

**GOOD FAITH TRESPASSERS**

Because we do not sustain points one through six, the judgment awarding full legal and equitable title to the interests in question

---

11. We note with interest this court's comment in 1934: "[T]he [Lusks] wholly failed to prove that the corporate stock received by them in consideration for the conveyance sought to be canceled was of less value than the mineral rights conveyed by them,...." *Blankenship v. Lusk,* 77 S.W.2d 341, 342 (Tex.Civ.App.—Waco 1934, no writ).

12. We agree with Appellees that "[T]he Lusks received the full benefit of their ownership in Farmers."

to Appellees will not be disturbed. Having made this determination, we deem immaterial both the jury's findings that Appellees were good faith trespassers when they entered the property to develop it and the findings about the reasonable development costs. *Campbell,* 406 S.W.2d at 194 (A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings.). Thus, we do not reach point seven.

## ATTORNEY'S FEES

Point eight attacks the court's award of attorney's fees to Appellees. The crux of the dispute over attorney's fees is whether the suit is a proper declaratory judgment action in which the court had discretion to award attorney's fees.

Title disputes are governed by chapter 22 of the Property Code. TEX. PROP.CODE ANN. § 22.001 (Vernon 1984) ("a trespass to try title action is the method of determining title to lands, tenements, or other real property"). Appellants contend Appellees "sought merely a judgment quieting title to their mineral estate" and attorney's fees are not available under chapter 22. To support their position, they cite *Bexar County Appraisal Review Bd. v. First Baptist Church,* 846 S.W.2d 554, 561 (Tex.App.—San Antonio 1993, writ denied), *Barfield v. Holland,* 844 S.W.2d 759, 771 (Tex.App.—Tyler 1992, writ denied), and *Kennesaw Life & Accident Ins. Co. v. Goss,* 694 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). These cases, they say, establish the proposition that a plaintiff may not artfully plead a title dispute as a declaratory judgment suit to obtain attorney's fees otherwise not available. To further support their claim, they point to Appellees' venue pleadings which say that the suit was brought under section 15.011 of the Civil Practice and Remedies Code. Section 15.011 provides:

Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.011 (Vernon Supp.1998). They also say that, if the award of attorney's fees was proper, the court should have apportioned them against the defendants instead of assessing them jointly and severally.

Appellees defend the award strictly on the discretion of the court to award attorney's fees under the Declaratory Judgment Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). They point to their pleadings as properly asserting the right to have the status of their title determined under the Act. They also say that Appellants' failure to file special exceptions waived their right to contend that this is not a declaratory judgment action. Finally, they say that the judgment actually awarded relief under the Act. As authority, they cite *Cobb v. Harrington,* 144 Tex. 360, 367, 190 S.W.2d 709, 713 (1945), *Salinas v. Gutierrez,* 341 S.W.2d 558, 560 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.), *Smith v. Shar–Alan Oil Co.,* 799 S.W.2d 368 (Tex.App.—Waco 1990, writ denied), and other cases.

The question of whether to award attorney's fees under the Declaratory Judgment Act when other claims are involved in the suit is sometimes confusing. After reviewing the cases cited by the parties, we are persuaded by the Tyler Court's analysis of a similar situation:

Plaintiffs recovered attorney's fees under [Section 37.009 of the Civil Practice and Remedies Code] by styling their suit to recover title as one for declaratory judgment. There is in this suit no question of "construction" or "validity" of the deeds by which the Plaintiffs acquired their title, and this is therefore not a proper subject matter for declaratory relief under Sec. 37.004 of the Code. This suit is, in effect, one for recovery of land based upon an equitable title, under the doctrine of equitable partition, and as such it is an action for trespass to try title and not for declaratory judgment. *See, Griffin v. Collins,* 310 S.W.2d 137, 139 (Tex.Civ.App.—Amarillo 1958, no writ). Furthermore, even though the Uniform Declaratory Judgment Act

provides a procedural device for the construction or validity of deeds by those whose rights are affected by such instruments, the substantive rights of the parties in this suit are governed by the Trespass to Try Title statutes, TEX. PROP. CODE ANN. Secs. 22.001–.045, which made no provision for attorney's fees. *See Kennesaw Life & Accident Insurance Co. v. Goss,* 694 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), where the Court of Appeals held that the trial court abused its discretion in using the Declaratory Judgment Act to settle a title dispute and awarding attorney's fees under the act.

*Barfield,* 844 S.W.2d at 771. Although the claims here are somewhat different from those in *Barfield,* we will apply the analysis to this case.

■ The judgment vests title to the disputed mineral interests in Appellees, then states: "which title is unencumbered by any claim of any of the Defendants in this lawsuit." In a single later paragraph, the court "declares" that the Lusk to Walker deed "is void as to the interests conveyed in the Farmers Deed and the Blankenship Deed." Because the judgment had already vested title in Appellees to the exclusion of the other parties to the suit, the latter declaration was unnecessary and redundant.

This suit involves a title dispute between competing deeds. It does not involve the construction or validity of the deeds. As such it is an action for trespass to try title and not for declaratory judgment. Following the *Barfield* rationale, we sustain point eight. *See id.* The award of $98,000 in attorney's fees will be deleted from the judgment.

## CONCLUSION

Having sustained Appellants' point concerning attorney's fees, the judgment is reformed by deleting the paragraph that awards Appellees "$98,000 from the Trial Defendants and the *Ad Litem* Defendants, jointly and severally." As reformed, the judgment is affirmed.