TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00061-CV






The Archaeological Conservancy, Appellant


v.


Wilson Land and Cattle Company and Will R. Wilson Jr., Appellees






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 06-834-C368, HONORABLE BURT CARNES, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N




 Appellant The Archaeological Conservancy (the "Conservancy") filed suit against
appellees Wilson Land and Cattle Company ("WLCC") and Will R. Wilson Jr. seeking judicial
construction of a deed conveying land from WLCC to the Conservancy, subject to certain conditions
subsequent, and a determination of the validity of WLCC's subsequent reverter deed conveying the
property to Wilson Jr. After a bench trial, the trial court rendered judgment that the Conservancy
take nothing by its suit. On appeal, the Conservancy argues that the trial court erred in its
construction of the reverter clause contained in the original deed, that no evidence supports the
court's finding that title in fact reverted from the Conservancy to WLCC, and that the cause should
be remanded for a determination of whether the Conservancy is entitled to attorney's fees. We will
affirm the judgment of the trial court.


FACTUAL AND PROCEDURAL BACKGROUND


 The Conservancy is a nonprofit corporation established for the purpose of
identifying, acquiring, and preserving significant archaeological sites throughout the United States. 
On April 11, 1991, Will R. Wilson Sr., as president of WLCC, executed a deed (the "Gift Deed")
conveying a 2.5-acre tract of land ("the Property") to the Conservancy subject to the following
conditions subsequent:


(i) the Property shall be used predominantly to provide an archaeological laboratory
for intermittent research excavations, restoration of Indian artifacts and habitats,
exhibition of artifacts and restored habitats to the public or for any other
archaeological purpose; (ii) all artifactual materials removed from the Property shall
be donated to the Texas Archaeological Research Laboratory, the University of
Austin or its successor, or another appropriate Texas archaeological repository, in the
name of Grantor; (iii) this gift of the Property shall be acknowledged with a plaque
on the Property in memory of Marjorie Ashcroft Wilson; and (iv) the Property shall
be named the "Marjorie Ashcroft Wilson Archaeological Preserve".



The Gift Deed also contained a reverter clause, which stated:


If at any time the Property shall no longer be used in conformity with the foregoing
conditions, then this grant shall determine and come to an end, and without necessity
for action on the part of Grantor, the Property and all rights therein shall revert to and
vest in Grantor, its successors and assigns.



 The Property remained with the Conservancy from 1991 until January 3, 2005, when
Will R. Wilson Sr. signed a deed (the "Reverter Deed") on behalf of WLCC purporting to convey
the Property to his son, appellee Will R. Wilson Jr. (1) The Reverter Deed recites that "the Property
has not been used in conformity with the conditions of [the Gift Deed], and the grant has determined
and come to an end, and title to the Property has reverted to and vested in Wilson Land and Cattle
Company, Inc." The Conservancy asserts that it did not learn of the Reverter Deed until it was
recorded on August 17, 2006.

 The dispute giving rise to the instant controversy began during August 2006.
According to the Conservancy, a number of real estate developers had approached it over the years
in connection with development proposals in the vicinity of the Property. The Conservancy did not
agree to consider any of these proposals, however, until a developer proposed a "land swap" deal
wherein the Conservancy would exchange a 50-foot-wide strip along the Property's western border
for a larger, more archaeologically significant piece of land. (2) On April 7, 2006, the Conservancy
entered into an agreement with the developer to exchange the parcels of land and received $10,000
in earnest money. Then, on August 16, 2006, after obtaining approval from the Texas Historical
Commission, the Conservancy approached Wilson Jr. about releasing the 50-foot strip so that
the transaction with the developer could close. Thereafter, Wilson Jr. recorded the previously
signed Reverter Deed, changed the lock on the entry gate, and posted "No Trespassing" signs on
the Property.

 After learning of the Reverter Deed, the Conservancy continued its efforts to pursue
the deal with the developer. In September 2006, they amended the exchange agreement to grant the
Conservancy additional time to try to remove the encumbrances from title to the 50-foot strip and
to delay the Closing Date until December 20, 2006, or within fifteen days of such date that the
Conservancy provided clear title to the Property. When its efforts to negotiate with Wilson Jr. and
WLCC proved unsuccessful, the Conservancy returned the earnest money to the developer and filed
a trespass-to-try-title suit under Texas Property Code section 22.001 asserting ownership of the
Property and alleging that WLCC had illegally granted title to the Property to Wilson Jr. The
Conservancy later added a cause of action under the Texas Uniform Declaratory Judgments Act
("UDJA"). See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). In the UDJA
action, the Conservancy sought declarations "that Defendant Wilson Land and Cattle Company
illegally deeded the property to Defendant Will R. Wilson, Jr. on January 3, 2005," and that the
Conservancy "has not violated the terms of the April 11, 1991 deed in which Defendant Wilson Land
and Cattle Company gave title to the Subject Property to Plaintiff." The Conservancy also sought
attorney's fees under the UDJA and section 16.034 of the civil practice and remedies code. See
id. § 16.034 (West 2008). WLCC and Wilson answered and counterclaimed for a declaration that
title to the Property had reverted under the Gift Deed.

 The case was tried to the court in October 2007. On the first day of trial,
the Conservancy abandoned its trespass-to-try-title action, electing to proceed only on its
declaratory-judgment action, after appellees raised a series of objections relating to the
Conservancy's failure to comply with the special pleading and proof requirements applicable
to trespass-to-try-title actions. See Tex. R. Civ. P. 783-809. In addition to objecting to the
trespass to-try-title cause of action on the basis of procedural failings, appellees argued that
the Conservancy's requests for declaratory relief that WLCC "illegally deeded the property to
Will R. Wilson, Jr." and that "plaintiff has not violated the terms of the April 11th gift deed"
were also improper. In explaining their objection to the Conservancy proceeding on its
declaratory-judgment action, appellees argued:


That basically is taking their TTT [trespass-to-try-title] allegation and regurgitating
it, I believe, as an attempt to get attorneys' fees because the next paragraph is for
fees. So they--by this so-called declaratory judgment, they have not come at it from
a different angle or a different degree or a different cause of action. It's simply
they've restated it as a declaratory judgment action, and I think the same rules of
evidence are going to apply. They've still--they've still got to have a certified copy
[of the deed], and they've still got to comply with Davis v. Davis, I believe.


 The Conservancy then conceded that it had not filed within three days of the suit a
certified copy of the relevant deed and indicated that it would be willing "just to proceed on the
declaratory judgment action." After a recess, the trial court resumed and clarified the matter:


The Court: Before we begin with witnesses, Mr. Reznik [counsel for the
Conservancy], it's my understanding that the plaintiff desires to
abandon the trespass to try title cause of action.


Mr. Reznik: That is correct, your Honor, and proceed with the declaratory
judgment cause of action.



Following this exchange, the trial court denied appellees' motion for directed verdict that the
Conservancy take nothing on its trespass-to-try-title cause of action, reasoning that the Conservancy
had the right "to nonsuit the cause of action any time up until the trial actually starts."

 During the three-day trial, the Conservancy's expert witnesses testified regarding the
archaeological value of the Property, the practice of "conservation archaeology," and the
Conservancy's efforts to "preserve" the site, which it asserted was an acceptable "use" for an
archaeological purpose in accordance with the Gift Deed's conditions. Appellees countered with
evidence that the Conservancy failed to make appropriate use of the Property or to provide adequate
security, thereby allowing the Property to suffer damage at the hands of looters.

 One of the primary disputes at trial concerned the construction of the Gift
Deed--specifically, what the contracting parties intended in drafting the first condition (that the
Property be used "predominantly to provide an archaeological laboratory for intermittent research
excavations, restoration of Indian artifacts and habitats, exhibition of artifacts and restored habitats
to the public or for any other archaeological purpose"). Over the Conservancy's objection, the trial
court allowed testimony from Wilson Jr. and admitted a number of exhibits documenting various
correspondence between the Conservancy and Wilson Sr. prior to the execution of the Gift Deed. 
The court stated on the record that its basis for allowing the parol evidence was that "the parties
weren't in agreement on what [the above-quoted language] meant, and there's some ambiguity." 
Wilson Jr.'s testimony and the documentary evidence tended to show that the Wilsons and WLCC
intended this condition in the Gift Deed to ensure that the Property would be used for a public
purpose--e.g., that it would house a museum or an interpretive center or something of that
nature--and not that it would be passively "preserved" for an indefinite period of time without ever
opening the land to the public or actively conducting excavation on the site. (3)

 At the close of the evidence, the trial court found that the Property had reverted to the
WLCC and rendered judgment in favor of appellees. Its findings were memorialized in the final
judgment signed November 1, 2007, which ordered that the Conservancy take nothing by its suit and
decreed that "the property was not used as required in the reversionary clause in the gift deed . . . and
therefore fee simple title to the property has reverted to [WLCC] and/or its successors and assigns"
free and clear of any interest or claims of the Conservancy. On the Conservancy's motion, the trial
court also issued findings of fact. Of relevance to this appeal are the following:


Although [WLCC] expanded the size of the grant in reliance on the Conservancy's
Representation that an interpretive center would be built or maintained on the
Property, no such interpretive center or visitor's center was ever built or maintained
on the Property.


The Conservancy failed to set aside any area on the Property for an interpretive center
or visitor's center.


The Conservancy had no plans for building or maintaining an interpretive center or
visitor's center on the Property.


The Conservancy attempted to sell a portion of the Property intended for use as an
interpretive center and related parking to a real estate developer for $100,000 and for
other land.


No portion of the Property has been excavated or interpreted for the public as a
county, state or national park.


The Conservancy never opened the Property to the public and had no plans to do so.


The Conservancy did not use the Property predominantly to provide an archeological
laboratory for intermittent research excavations, restoration of Indian artifacts and
habitats, exhibition of artifacts and restored habitats to the public, or for any other
archeological purpose.


The Conservancy maintained no archeological laboratory on the Property.


No research excavations for archeological purposes took place on the Property
after 1993.


No restoration of Indian artifacts and habitats took place on the Property.


The activities on the Property connected with the conservancy's planned sale of a
portion of the Property to the real estate developer were not conducted for
archeological purposes.


No exhibition of artifacts and restored habitats for the public took place on the
Property.



 The Conservancy now appeals, arguing that the trial court erred in finding the Gift
Deed ambiguous without any pleading of ambiguity by the parties, thereby erroneously allowing
parol evidence of the parties' intent and imposing requirements on the Conservancy not found within
the four corners of the Gift Deed. The Conservancy also argues that the evidence supporting the trial
court's judgment is legally insufficient.


DISCUSSION


 As a preliminary matter and because it is dispositive of the issues that the
Conservancy raises on appeal, we first address appellees' contention that the Conservancy's suit for
declaratory relief was improper because it raised title issues that could only have been adjudicated
in a trespass-to-try-title suit. In support of their argument, appellees rely principally on Martin
v. Amerman, 133 S.W.3d 262 (Tex. 2004). In Martin, the Texas Supreme Court held that a
trespass to-try-title action is the exclusive means to resolve the parties' substantive rights in a
boundary-dispute case, thereby prohibiting the parties from adjudicating their claims in a
declaratory-judgment action. 133 S.W.3d at 267 (noting that trespass-to-try-title statute "expressly
provides that it is 'the method for determining title to . . . real property"). (4) Several courts of appeals,
including this Court, have interpreted Martin to mean that a trespass-to-try-title claim "is the
exclusive method in Texas for adjudicating disputed claims of title to real property." State v. BP Am.
Prod. Co., 290 S.W.3d 345, 360 (Tex. App.--Austin 2009, pet. filed); see Lile v. Smith,
291 S.W.3d 75, 77-78 (Tex. App.--Texarkana 2009, no pet.); Veterans Land Bd. v. Lesley,
281 S.W.3d 602, 627 (Tex. App.--Eastland 2009, pet. filed); Porretto v. Patterson, 251 S.W.3d 701,
708 (Tex. App.--Houston [1st Dist.], no pet.); Ruiz v. Stewart Mineral Corp., 202 S.W.3d 242,
247-48 (Tex. App.--Tyler 2006, pet. denied); Ely v. Briley, 959 S.W.2d 723, 727 (Tex.
App.--Austin 1998, no pet.); see also MBM Fin. Corp. v. Woodlands Operating Co., L.P.,
292 S.W.3d 660, 669 & n.48 (Tex. 2009) (describing, in dicta, property code's trespass-to-try-title
action as "exclusive remedy" for adjudicating title disputes).

 As part of its request for affirmative relief, the Conservancy sought a declaration that
WLCC "illegally deeded the property to Defendant Will R. Wilson, Jr."--a controversy that, at its
heart, seeks to determine title to a defined parcel of land under competing deeds, which is precisely
what the trespass-to-try-title action is intended to address. See Lile, 291 S.W.3d at 78 (declaratory
relief that Smiths were owners of property and had wrongfully been denied access was improper and
claims could only be prosecuted in trespass-to-try-title action); Roberson v. City of Austin,
157 S.W.3d 130, 136 (Tex. App.--Austin 2005, pet. denied) ("[W]hen one seeks title to property,
trespass to try title, and not the UDJA, is the proper cause of action."). Indeed, the Conservancy
itself acknowledges that one of the "ultimate questions" in this case is "who owns the Preserve," a
question that squarely determines title to the Property and therefore could not be brought under
the UDJA.

 Yet the Conservancy also asked the trial court to declare the rights, status, or other
legal relations between the parties under the Gift Deed, specifically by construing the terms of the
Gift Deed's reverter clause and finding that the Conservancy had not violated the reverter clause. 
The Conservancy urges that, under the plain language of the UDJA, it was entitled to "have
determined any question of construction or validity arising under" the Gift Deed. See Tex. Civ. Prac.
& Rem. Code Ann. § 37.004(a). The courts of appeals have not been entirely consistent in
answering the question of whether a party may pursue declaratory relief when the controversy sought
to be resolved by the declaration implicates title but does not directly decide it. Compare Hawk
v. E.K. Arledge, Inc., 107 S.W.3d 79, 84 (Tex. App.--Eastland 2003, pet. denied) ("Any suit that
involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its
form."); Jordan v. Exxon Corp., 802 S.W.2d 880, 883 (Tex. App.--Texarkana 1991, no writ) ("Any
suit that involves a dispute over the title to land is, in effect, an action in trespass to try title,
whatever its form and regardless of whether legal or equitable relief is sought."); Kennesaw Life
& Accident Ins. Co. v. Goss, 694 S.W.2d 115, 118 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd
n.r.e.) ("While the [UDJA] specifically provides a procedural method for the construction or validity
of deeds by those whose rights are affected by such instruments, the substantive rights of the parties
are governed by the Trespass to Try Title statutes."), with Cadle Co. v. Ortiz, 227 S.W.3d 831,
837-38 (Tex. App.--Corpus Christi 2007, pet. denied) (allowing plaintiff to litigate validity of lien
under UDJA, even though dispute "ultimately implicates title"); Brush v. Reata Oil & Gas Corp.,
984 S.W.2d 720, 730 (Tex. App.--Waco 1998, pet. denied) (permitting relief under UDJA in suit
to construe oil and gas leases). (5)

 What is clear, however, is that in trying to resolve whether a suit in this context may
proceed under the UDJA, courts look to the heart of the dispute to determine whether, in substance,
it is a dispute over title, or whether the true aim of the suit is simply to determine the validity or
construction of a deed or other instrument. See, e.g., McRae Exploration & Prod. v. Reserve
Petroleum Co., 962 S.W.2d 676, 685 (Tex. App.--Waco 1998, pet. denied) ("This suit involves a
title dispute between competing deeds. It does not involve the construction or validity of the deeds.
As such it is an action for trespass to try title and not for declaratory judgment."); Bell v. State Dep't
of Highways & Pub. Transp., 945 S.W.2d 292, 294 (Tex. App.--Houston [1st Dist.] 1997, writ
denied) ("Bell makes no claim that the adverse possession statutes are ambiguous or invalid. He
claims only that the State is not entitled to ownership under them. The Declaratory Judgment Act
does not supplant a suit for trespass to try title under these circumstances. Moreover, the State claims
ownership under a lost deed; thus, there is no deed whose validity must be determined or
terms construed.").

 In this case, while it is true that the Conservancy sought a construction of the terms
of the Gift Deed, the real controversy between it and the appellees--as alleged in the Conservancy's
petition--concerns who owns the land. The Conservancy's request for a declaration that it did not
violate the reverter clause in the Gift Deed is not a separate, stand-alone controversy; rather, it goes
to the heart of the dispute over title to the Property because it is clear that the Conservancy intended
to use this declaration to establish that it had retained title under the Gift Deed. In other words, the
Conservancy's suit to declare the Reverter Deed invalid and its request for a judicial construction
of the Gift Deed's reverter clause were both means to determine title to the Property. Accordingly,
we hold that the Conservancy had to pursue both as actions in trespass to try title and could not
pursue either claim under the UDJA.


CONCLUSION

 Having determined that the exclusive remedy available to the Conservancy was in
trespass to try title and not under the UDJA, we overrule the Conservancy's issues and affirm the
judgment of the district court. (6)



 

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: March 30, 2010
1. Wilson Sr. died in December 2005, and his estate is not a party to this appeal.
2. The record indicates that the 50- by 210-foot strip of the Property that the Conservancy was
to give up would have been used to provide driveway access to the developer, who intended to build
townhomes on an adjoining parcel.
3. The essence of Wilson Jr.'s testimony is that it was his family's understanding that their
donation of the site would be "an educational compliment to the Leanderthal [site,] which has
enormous public interest in this community." The reference is to the so-called "Leanderthal Lady,"
one of the oldest and most complete human skeletons ever found in North America, discovered near
the Property during an excavation by the Texas Department of Transportation in 1983.
4. Post-Martin, the legislature amended the UDJA to allow a party to obtain declaratory relief
"when the sole issue concerning title to real property is the determination of the proper boundary line
between adjoining properties." See Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (West 2008).
5. The Conservancy urges this Court to analogize the present case to Florey v. Estate of
McConnell, 212 S.W.3d 439 (Tex. App.--Austin 2006, pet. denied), a case involving a suit to
rescind a deed under the UDJA. We note, however, that Florey never raised an objection that the
estate's claim to quiet title was governed by the trespass-to-try-title statute, which distinguishes that
case from the present one. See Krabbe v. Anadarko Petroleum Corp., 46 S.W.3d 308, 320-21 (Tex.
App.--Amarillo 2001, pet. denied) (if trespass-to-try-title claim is brought as declaratory-judgment
action, absent objection to that procedure, any error in permitting suit under UDJA is waived).
6. We note that the Conservancy does not challenge on appeal whether the trial court erred
in rendering judgment on the appellees' counterclaims for declaratory relief regarding their rights
under the Gift Deed. Therefore we express no opinion as to the propriety of the trial court's
declaratory judgment construing the Gift Deed and declaring that fee simple title to the Property
reverted to WLCC.