LUND et al. v. EMERSON.

No. 5811.

Court of Civil Appeals of Texas. Amarillo.
Sept. 15, 1947.

K. H. Dally and Leigh Fischer, both of Borger, for appellants.

J. O. Ward, of Borger, for appellee.

LUMPKIN, Justice.

On this appeal the principal law question involved is whether the abstract of title furnished by the appellants, L. G. Lund and J. L. Peebles, to the appellee, Wyle Emerson, shows a marketable title to certain property located at Borger, Texas.

On August 17, 1946, the parties to this suit entered into a contract whereby the appellants were to sell appellee the east 40 feet of lot 11 in block 24 of the Isom Addition of Borger, Hutchinson County, Texas, on which was located a three-room house and a garage. The total consideration was $1800. The contract provided that the appellee was to place $300 in escrow in the Panhandle State Bank of Borger, until the appellants furnished to the appellee a good and merchantable title with abstract of the same up to and including the date of the contract; and, that upon being furnished a good and merchantable title, the appellee agreed to pay the remaining $1500 of the purchase price to the appellants; that appellants were to deliver to the Panhandle State Bank of Borger their general warranty deed, excepting the gas, oil, and mineral rights. The appellants further agreed to deliver to the appellee or his attorney at the earliest date practical their abstract of title; and if the abstract of title was approved by the appellee or his attorney, the Panhandle State Bank was authorized to deliver the $300, together with the $1500, to the appellant; and, at the same time, the bank was to deliver to the appellee the appellants' general warranty deed.

From the record it appears the appellants delivered an abstract of title to H. M. Hood, the appellee's attorney. In a title opinion dated August 20, 1946, Mr. Hood made the following objection to the title:

"On pages 19 and 20, George T. Bailey and wife [former owners of the property] executed and delivered to the Guaranty Construction Company of Amarillo, Texas, a materialman's lien agreement in which they pledged the entire lot number eleven (11), to secure the payment of $800; and which agreement provided for 10% attorney fees. There is nothing in the record to show that this has been paid, and a release showing the payment of the lien should be obtained from the Guaranty Construction Company and filed of record and brought down in a supplemental abstract to date."

The materialman's lien of which Mr. Hood speaks was dated March 1, 1931, and payable in sixteen monthly installments.

Soon after the contract of sale was signed, the appellee moved onto the property where he remained for a little less than two months.

Further, the record reveals that on September 6, 1946, Mr. Hood wrote a second title opinion in which he quoted Article 5520, as amended, Vernon's Annotated Civil Statutes, and stated as follows:

"Of course, this lien having been barred by the ten, four, and two year Statutes of Limitations under our general statute of limitation and this specific statute of limitation with respect to the first paragraph and other paragraphs, will make the lien as of this date ineffective, insofar as it did effect any claim that the construction company might attempt or try to assert against them.

"I approve the title as good and merchantable vested in the sellers to you, with the exception of the oil, gas, and mineral rights which are reserved on all the townsite property *. * *"

Upon the appellee's refusal to pay for the property, suit was brought by the appellants against the appellee in two counts: First, in trespass to try title on the above described property; second, the appellants asked for damages and a rescission of the contract of sale.

Trial was before the court without a jury, at the conclusion of which judgment was entered for the appellee awarding him the $300 in escrow. The court found that the appellants were entitled to recover from the appellee $50 for rent while the appellee was in possession of the property. To this

judgment the appellants excepted and gave notice of appeal to this court.

The trial court filed its findings of fact and conclusions of law. It found, in part, that the contract of sale provided that the appellants furnish the appellee with a marketable title subject to the approval of the appellee's attorney; that as earnest money the appellee placed $300 in escrow in the Panhandle State Bank, Borger; that during the title examination the appellee moved onto the premises and resided there with his family for a period of a little less than two months; that in a written opinion delivered to the appellee, his attorney objected to the title, declaring that an unreleased materialman's lien, shown in the abstract of title, constituted an incumbrance on the land; that this lien was shown to be barred by the statute of limitations; that later the appellee's attorney informed the appellants' attorney that he approved the title, but did not so inform the appellee; and that the appellee refused to purchase the land and vacated the premises.

In its conclusions of law the court stated that because the approval of the title by the appellee's attorney was a condition of the contract, and since an objection was made as to the marketable character of the title, the appellee was not obligated to purchase the property; that Article 5520 of the Revised Civil Statutes of Texas, 1925, Vernon's Ann.Civ.St. art. 5520, was a limitations statute which did not eliminate the possibility of a suit against the owner of the land; that an unreleased contract lien, though barred by the limitations statute, is an incumbrance rendering a land title unmarketable; that the appellee did not waive his attorney's objections to the title by moving onto the land, but the appellee was obligated to pay rent in the sum of $50; and that the appellants did not fulfill the terms of the contract; therefore the earnest money should be returned to the appellee.

In attacking the court's judgment, the appellants first contend that in view of Article 5520, as amended, Vernon's Annotated Civil Statutes, the trial court erred in holding that the lien of the Guaranty Construction Company constituted a cloud upon the title to the property involved and prevented the title from being merchantable.

While our courts have held there is some small distinction between the terms merchantable title and marketable title, as a rule, and for the purpose of this opinion, the two terms are regarded as synonymous. Alling v. Vander Stucken, Tex.Civ.App., 194 S.W. 443. A marketable title means a title free from reasonable doubt as to matters of law and fact, such a title as a prudent man, advised of the facts and their legal significance, would willingly accept. Myrich v. Leddy, Tex.Civ.App., 37 S.W.2d 308; Austin v. Carter, Tex.Civ.App., 296 S.W. 649; Moser v. Tucker, Tex.Civ.App., 195 S.W. 259. To be marketable, a title need not be absolutely free from every technical and possible suspicion. The mere possibility of a defect which, according to ordinary experience, has no probable basis, does not show an unmarketable title. Generally the courts have held that a title, such as an equitable title or limitation title, or one which exposes its holder to a reasonable probability of litigation, with the least chance of defeat, is not marketable. Thus, further, it has been held that a title is not marketable if clouded by any outstanding contract, covenant, interest, lien, or mortgage sufficient to form a basis of litigation. Nor is a title marketable if it depends upon an estoppel in pais, upon a question of presumption of fact, or upon extrinsic or parole evidence, unless such evidence is of great probative force and readily available. Although our courts have held that a purchaser is not obliged to accept a title that is defective or doubtful, they have declared that the bare possibility that the title may become defective is not a valid objection as to whether or not it is a marketable title. Rabinowitz v. North Texas Realty Co., Tex. Civ.App., 270 S.W. 579.

In 1945 the 49th Legislature, c. 278, amended Article 5520 of the Revised Civil Statutes of Texas, 1925, Vernon's Ann.Civ. St. art. 5520, providing among other things that all actions for the recovery of real estate by virtue of a superior title retained by the seller in a deed of conveyance or purchase money note, or for the foreclosure of any vendor's mortgage, deed of trust or voluntary mechanic's or materialman's lien on real estate, secured by a note or other written obligation, shall be instituted with-

in four years after the cause of action shall accrue; that no time could be counted out by a toll of limitations under any other statute, except Article 5538, Revised Civil Statutes of Texas, 1925, invoked by a bona fide purchaser, lien holder, or lessee who has no knowledge of any such toll of limitations and acquires his interest in the property at a time when the lien debt is more than four years past due and there is no written extension of record; and that at the expiration of the four year period, the payment of the lien debt shall be conclusively presumed to have been made unless extended by a written agreement of the parties as provided by law. Sections two and three of the Act read as follows:

"Sec. 2. Any laws in conflict herewith are to that extent repealed.

"Sec. 3. The fact that the Supreme Court of Texas in Hart v. Winsett, [141 Tex. 312], 171 S.W.2d 853, has held that the period of limitations applicable to vendor's liens, deeds of trust liens and other mortgage liens may be tolled by other statutes, and such decision has caused much delay in the sale and leasing of real estate, has created an emergency and an imperative public necessity, requiring the Constitutional Rule providing that bills be read on three separate days be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted." Acts 1945, 49th Leg., P. 441, Ch. 278; Article 5520, as amended, Vernon's Annotated Civil Statutes.

In the case of Hart v. Winsett, cited in the emergency clause of the Act, the Supreme Court reconciled two statutes, Articles 5537 and 5520. Article 5537 provides that the time during which the debtor absents himself from the state shall not be included in determining whether or not a cause of action is barred by limitations. Since Article 5520 (prior to its amendment in 1945) was only a limitations statute, the Supreme Court held that this Act must be considered in conjunction with Article 5537, and that Article 5520 would be tolled by the length of time the payor of the note was absent from the State of Texas.

As expressed in the Act, the Legislature amended 5520 to meet this very situation. In the case of a bona fide purchaser, lien holder, or lessee who has no notice or knowledge of any toll of limitations and acquires his interest in the property at a time when the lien debt is more than four years past due and there is no written extension of record, the statute cannot be tolled by any contingency except that provided by Article 5538 which provides an additional period of twelve months in case of the death of either party. Although, generally speaking, a presumption is rebuttable, we point out that the word *presumed* in the Act is preceded by the word *conclusively*. Giving the word *conclusively* its usual connotation, we conclude that at the expiration of the four year period, payment of any lien would, in the absence of those conditions contemplated by Article 5520, as amended, be considered final, decisive, and irrefutable. As previously announced by this court, "a conclusive presumption of payment is certainly as effective as a release could be." Harden v. Coffee, Tex.Civ.App., 59 S.W.2d 436, 438, citing McKinney v. Freestone County, Tex. Com.App., 291 S.W. 529.

This Act became effective September 3, 1945, and the time provided as a saving period barred any suit one year after the effective date.

It will be noticed that Mr. Hood's second title opinion was written September 6, 1946, more than one year after the effective date of this Act. It may be argued that at the time of the first title opinion the materialman's lien was not barred by the operation of Article 5520, as amended. This may have been possible, although there is nothing in the record to show an extension of the lien or that any claim has been asserted under it since its execution. However, the well-established rule of law giving the seller a reasonable time to correct the defects pointed out in the title opinion would apply in this case. Leonard v. King, Tex.Civ.App., 164 S.W. 1110; Lieber v. Nickolson, Tex.Com.App., 206 S.W. 512. This defect, if such existed, was cured by operation of law, September 3, 1946, when in our opinion, the title for

a certainty became good and marketable as held by Mr. Hood in his second title opinion. The lien note of March 1, 1930, was payable in sixteen monthly installments, the final installment being due on or before August 1, 1931. The second title opinion was dated September 6, 1946, more than fifteen years after the due date of the note. Under Article 5520, as amended, the lien is conclusively presumed to have been paid.

Because the contract of sale provided for an acceptance of title by either the appellee or his attorney, we consider the appellee's lack of knowledge as to his attorney's approval of the title as immaterial to this case. In our opinion the appellee accepted the title as marketable at the time Mr. Hood wrote his second title opinion.

Since we have held the title to be marketable, we deem it unnecessary to discuss the appellants' contention that any existing defect was waived by the appellee when he moved onto the property or that such defect was waived by Mr. Hood's second title opinion.

From the evidence it is deducible that the appellee moved on the premises with the acquiescence of the appellants and under no vestige of a rental contract. Therefore, the judgment of the trial court is reversed and here rendered for the appellants.