**GLENS FALLS INSURANCE COMPANY, Appellant,**

v.

**The STATE NATIONAL BANK OF EL PASO, Appellee.**

**No. 6218.**

Court of Civil Appeals of Texas, El Paso.

Jan. 5, 1972.

Rehearing Denied Jan. 26, 1972.

Allison, Maddin, White & Brin, Guy Allison, Raul Garcia, Corpus Christi, for appellant.

Kemp, Smith, White, Duncan & Hammond, Jack T. Chapman, James F. Garner, El Paso, for appellee.

## OPINION

RAMSEY, Chief Justice.

Glens Falls Insurance Co., Plaintiff-Appellant, filed suit against The State National Bank of El Paso, Defendant-Appellee, to rescind a sales transaction and for damages. Trial was to a jury. The trial Court entered judgment for the Defendant. We reverse and render.

The facts are relatively uncontroverted. Plaintiff had bonded a defaulting contractor on a road project. Defendant, through its loan officer, Jim Alcorn, loaned $2,200.-00 to a bank customer named Howard Martin, and as security for the loan, obtained a mortgage on a truck with a slurry machine attached. Martin had previously purchased the truck with the machine attached from Slurry Seal, Inc., and had financed the purchase through a Waco bank. Martin, simultaneously with his purchase, executed a license agreement with Slurry Seal, Inc., dated May 1, 1963, wherein it was provided that the slurry machine attached to the truck was supplied on a lease basis and provided for payment of a license fee and expressly provided that title to the machine was retained by Slurry Seal, Inc.

In negotiating the loan with Defendant, Martin paid the Waco bank the balance of the original indebtedness of $12,569.65, and notified Slurry Seal, Inc., that he desired to borrow money from the Defendant and pledge the unit. Slurry Seal, Inc., sent Martin a Texas form of certificate of title to the "1963 International Truck, body style Slurry Machine." Thereupon, Defendant, assuming Martin owned both the truck and machine, loaned Martin $2,200.00 on August 23, 1965, and evidenced its lien on a corrected Texas Certificate of Title.

Martin became in default with Defendant and on May 26, 1966, allowed Defend-

ant, with written permission, to repossess the unit. At the time the truck and machine were located in the Rio Grande Valley. Plaintiff contacted Defendant about leasing the equipment to complete the job for which it was responsible, but Defendant declined to lease it but did agree to sell it for $7,000.00. In the meantime, Plaintiff entered into an agreement with Rio Paving Company to sell the equipment to Rio Paving Company for $7,000.00, after completion of the road work. Rio Paving Company agreed to purchase the equipment if Plaintiff conveyed marketable title. Alcorn, as a representative of Defendant, had represented to Plaintiff that Defendant could convey good title to the unit. The Plaintiff paid Defendant the $7,000.00 on July 14, 1966.

Before Plaintiff's agreement with Rio Paving could be consummated, Slurry Seal, Inc., on July 29, 1966, notified Plaintiff of its claim of ownership of the machine and sent an invoice to Martin for $26,570.00 for equipment rental under the lease agreement. On August 22, 1966, Plaintiff notified Defendant of its desire to rescind the transaction and requested that the $7,000.00 consideration be returned. Defendant declined to rescind the transaction.

The jury, in answer to the issues submitted, found:

(1) That Defendant's agent represented to Plaintiff that it could convey marketable title to the truck and machine.

(2) That on July 14, 1966, the Defendant could not convey marketable title.

(3) That Plaintiff relied on the representation.

(4) That Slurry-Seal, Inc., was asserting ownership.

(5) That had Plaintiff known of Slurry-Seal's claim, it would not have purchased the machine.

(6) That Slurry-Seal, Inc., furnished Martin with possession of the truck.

(7) That Slurry-Seal, Inc., did not furnish Martin with title to the truck and machine.

(8) That Slurry-Seal, Inc., did not file a chattel mortgage or other evidence of ownership.

(9) That there was no sign on the machine showing any claim of ownership by Slurry-Seal, Inc.

(10) That at the time Defendant made its loan to Martin, Slurry-Seal, Inc., had furnished to Martin, such indicia of ownership as would lead a reasonable person to believe Martin owned the machine.

(11) That Defendant's loan officer acted as a reasonable person would in relation to the question of ownership.

(12) That the value of the truck and machine on July 14, 1966, was $8,500.00.

(13) The value of the truck alone was $3,000.00.

The trial Court, in granting Defendant's Motion for Judgment, found that the jury's answers to Issues 10 and 11 made its answer to Issue No. 2 immaterial and entered judgment for Defendant. Neither Martin, Slurry Seal, Inc., nor Rio Paving Company were joined as parties in the suit.

From a review of the record, there is no doubt that both parties were dealing in absolute good faith.

 The first matter to be determined is the marketability of title. This is a question of law. Bourland v. Huffhines et al., 269 S.W. 184, affirmed in 280 S.W. 561 (Com.App.1926, opinion adopted); Lund v. Emerson, 204 S.W.2d 639, (n. w. h.); Texas Auto Co. v. Arbetter, Tex.Civ. App., 1 S.W.2d 334 (writ dismissed). The

definition of "marketable title" given by the Court in its charge is taken from Lund v. Emerson, (supra), as follows:

"By the term 'marketable title' is meant a title free from reasonable doubt as to matters of law and fact, and such a title as a prudent man, advised of the facts and their legal significance, would willingly accept, but a title need not be absolutely free from every technical and possible suspicion in order to be marketable."

The opinion in Lund v. Emerson, (supra), further states:

"Generally the courts have held that a title, such as an equitable title or limitation title, or one which exposes its holder to a reasonable probability of litigation, with the least chance of defeat, is not marketable. Thus, further, it has been held that a title is not marketable if clouded by any outstanding contract, covenant, interest, lien, or mortgage sufficient to form a basis of litigation."

There are instances where accessories attached to a motor vehicle, without effort on the part of the vendor to retain title, are permitted to pass with the vehicle. This is under the doctrine of accession, and is recognized in this state. Texas Hydraulic & Equipment Company v. Associates Discount Corporation, 414 S.W.2d 199 (n. w. h.); 43 A.L.R.2d 819; Am.Jur. 2d, Vol. 1, pp. 276–277. However, where the vendor's interest is retained and the accessories are easily identifiable and removable without injury to the vehicle, they do not become a part of the vehicle by accession. Firestone Service Stores, Inc., v. Darden et al., 96 S.W.2d 316 (n. w. h.); Star Finance Corporation et al., v. Chain Inv. Co., Tex.Civ.App., 146 S.W.2d 291 (n. w. h.). The Slurry machine is easily identifiable by serial number. It was attached to the truck by U bolts and not permanently affixed. The President of Slurry Seal, Inc., testified that it could be removed in one to two hours. The truck would not be damaged by its removal though its utility would be diminished.

Here, the lease agreement between Slurry-Seal, Inc., and Martin expressly provided that title to the machine itself would remain in Slurry-Seal, Inc. Martin acknowledged, to some extent, his acquiescense to the lease agreement by making some payments on the footage basis. Additionally, Slurry-Seal, Inc., had submitted its invoice for payment. Its president claims title and had requested permission from Rio Paving Co., to obtain the machine. Defendant contends that Slurry-Seal, Inc., is not serious in its claim since it had commenced no legal action. Slurry-Seal, Inc.'s inactivity would not serve to vest the Defendant with title. We can only conclude, as a matter of law, under the facts presented here, that the Defendant did not have marketable title to the Slurry machine.

Having so concluded, we must then determine if the Plaintiff is entitled to rescission. The law is well settled that a person induced to execute a contract on material representations relied on by him and afterwards found to be false, may have the contract cancelled. Jesse French Piano & Organ Co. v. Costley, 116 S.W. 135 (n. w. h.). The representation must be such that without it, the agreement would not have been entered into. Small v. Morris, Tex.Civ.App., 252 S.W.2d 772 (reversed for other reasons, 152 Tex. 192, 255 S.W. 2d 174, 1952). Rescission is also available for a material representation made in good faith, with no intention to deceive. Hoyt v. First National Bank, Tex.Civ.App., 247 S.W. 637 (affirmed, Freshwater v. Hoyt, 259 S.W. 923, Com.App.1924). Plaintiff here is entitled to rescission.

Plaintiff sought recovery for the $7,000.-00 consideration and for attorney's fees and punitive damages. No proof was made for the attorney's fees or punitive damages. We conclude that the Plaintiff is entitled to

judgment for rescission and for the consideration paid.

The judgment of the trial Court is reversed and judgment for rescission and for the sum of $7,000.00 is hereby rendered for the Plaintiff.