IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00266-CV

 

Nadine Ivy Phillips,

                                                                      Appellant

 v.

 

Betty Jean Ivy, Individually

and as Independent executrix

of the Estate of 

James Bradford Ivy, Deceased,

                                                                      Appellees

 

 

 



From the 87th District Court

Freestone County, Texas

Trial Court # 00-349-B & 00-274-B

 



Dissenting Opinion ON MOTION FOR REHEARING



 








      Phillips
has filed a motion for rehearing asking us to reconsider our affirmance of the
trial court’s refusal to award prejudgment interest.  First, I would request a response in order to
have the benefit of full briefing on the issue. 
Based upon the issue as presented, however, I am inclined to agree that
we have erred in relying upon the authority of two Fort Worth cases, one of which was reversed.  See
Citizens Nat’l Bank v. Allen Rae Invs., Inc., No. 2-02-095-CV, 2004 Tex.
App. LEXIS 6395, at *61-*65 (Tex. App.—Fort Worth July 15, 2004, no pet. h.); Miga v. Jensen, 25 S.W.3d 370, 381 (Tex.
App.—Fort Worth 2000), aff’d in part on
other grounds & rev’d in part, 96 S.W.3d 207, 217 (Tex. 2002).

      Accordingly,
I respectfully dissent to the Court’s denial of the motion for rehearing.

TOM
GRAY

Chief Justice

Dissenting
opinion on motion for rehearing delivered and filed September 29, 2004






o the great weight and preponderance of the evidence
and because he established statutory fraud and damages as a matter of law (two points);
 
      ∙    not entering a judgment for rescission of the contract and an award of the consideration
paid under the contract because he established that he was entitled to rescission as a
matter of law (two points);
 
      ∙    awarding attorney’s fees to Reata because Reata failed to prove contractual damages and
because the court did not render a declaratory judgment in Reata’s favor (two points).

We will affirm the judgment.
I. FACTUAL BACKGROUND
      Powell is the president of Reata and Shield. Reata is a wholly-owned subsidiary of Shield. 
Pursuant to previous negotiations between Brush and Powell, Powell sent Brush a proposed
“Lease Purchase and Development Agreement” on December 4, 1992. Powell sent the proposed
agreement on Reata stationery. In the agreement, Reata


 made the following representations
concerning the title of the Vilas property in which Reata was offering to sell Brush a working
interest:
Reata has purchased and offers for sale 100% of a 75% net revenue interest available in
one (1) leasehold, which is subject to a 50% reversionary or “back-in” working interest
after payout. . . .
 
. . . .
 
Reata has had title to the drillsite examined by Its Attorney and is satisfied that It owns
merchantable title to said drillsite and Participant is free to examine or have his attorney
examine this title opinion. However, it is expressly understood and agreed that Reata
does not warrant title and any loss that may occur due to failure of title, shall and will be
a joint loss by all working interest owners including Reata and such loss will be borne
in proportion to each interest owner’s ownership in the project.

Brush accepted the terms and conditions of the agreement and purchased a twenty percent working
interest in the Vilas project. He signed a memorandum of acceptance on December 15, 1992, and
returned the signed agreement to Reata’s corporate office.
      Powell also sent Brush a separate repurchase guarantee on December 4. In this document,
Reata agreed to repurchase Brush’s interest in the Vilas project for the original purchase price, less
all net proceeds distributed, if Brush did not recover 100% of his investment within two years. 
The repurchase guarantee is also printed on Reata stationery.
      The Vilas family signed an Oil, Gas and Mineral Lease in favor of Shield on December 15,
1992. In this lease, the Vilas conveyed to Shield the leasehold estate in which Brush purchased
a working interest from Reata and to which Reata had previously represented it had merchantable
title.
      Powell mailed regular reports to Brush on Reata stationery advising him on the progress of
the Vilas project. Brush testified that these reports were very positive and made him feel very
good about his investment in the Vilas well. Brush began receiving his monthly disbursements
in May 1993. The checks were issued under the name “Revenue Disbursements” and reflect the
address shared by Reata and Shield’s corporate offices. Powell signed the checks. Each check
was accompanied by a statement from Shield indicating Brush’s share of operating expenses and
the resulting net proceeds.
      In April 1993, Reata offered Brush the opportunity to purchase a share of the mineral estate
in 3,000 acres which Reata purportedly had purchased from landowners adjacent to the Vilas’
property. Brush accepted this offer and purchased a twenty percent share in the acreage at some
point between April and July.


 According to a title opinion offered in evidence, Shield holds legal
title to this leasehold estate. Reata did not provide Brush a repurchase guarantee for the acreage
agreement.
      In June 1993, Reata offered Brush a proportional working interest in the Jericho project which
covers approximately 700 acres of the 3,000-acre mineral estate Brush and others had joined Reata
in purchasing. Reata made the same representations concerning its title to the Jericho leasehold
estate which it had made in the Vilas purchase and development agreement. Brush accepted the
Jericho offer and purchased a twenty percent interest in the project by written memorandum dated
July 8, 1993. Reata did not provide a repurchase guarantee for the Jericho purchase and
development agreement.
      Thereafter, Brush began efforts to obtain a written assignment from Reata reflecting his
purchases of the working interests in the Vilas and Jericho wells and of a percentage of the
leasehold estate in the 3,000-acre tract. Brush requested this assignment so that he could have a
specific title document to which he could refer in a trust he was creating for his children. 
According to Brush, Powell promised the assignment by the end of 1993 but did not deliver on
his promise.
      In March 1994, Brush instituted a lawsuit against Reata and Shield in federal court alleging
among other things the same fraud allegations which are contained in the present lawsuit. This
lawsuit and two others filed in April and May of the same year were voluntarily dismissed or non-suited by Brush. After Brush non-suited the last lawsuit in August 1995, Reata and Shield filed
their petition for declaratory judgment, and the present litigation ensued.
      During the pendency of these various suits, Brush informed Reata in April 1994 that he
desired to collect his share of the gas produced by the Vilas and Jericho wells “in-kind” because
he was negotiating a separate agreement for the sale of his share of the gas to the company
producing and marketing the gas from those wells. By letter dated December 21, 1994, Brush
asked Reata to honor its repurchase guarantee and repurchase his interest in the Vilas well under
the terms of the guarantee. Brush informed Reata that according to his calculations the repurchase
amount should be $148,238.34. Reata disputed Brush’s calculations in a letter dated January 11,
1995, and asked Brush or his counsel to contact Reata’s counsel to resolve the dispute. The
parties were never able to resolve their dispute.
II. THE FRAUD ISSUES
      In Brush’s first four points, he claims that the court erred in overruling his motion for JNOV
on the jury’s failure to find common law or statutory fraud or damages for such fraud. Brush
contends that the jury’s failure to find fraud and damages is contrary to the great weight and
preponderance of the evidence and that he established fraud and damages as a matter of law. 
Appellees respond that Brush has failed to properly preserve a portion of these points for appellate
review and that the evidence is legally and factually sufficient to support the jury’s verdict.
A. Denial of JNOV Motion
      When an appellant challenges the denial of its motion for JNOV, we review the record to
determine if it contains more than a scintilla of evidence to support the jury’s verdict. Tubb v.
Bartlett, 862 S.W.2d 740, 744 (Tex. App.—El Paso 1993, writ denied). A party with the burden
of proof at trial is entitled to JNOV on a particular issue only if the evidence establishes that issue
as a matter of law. Cain v. Pruett, 938 S.W.2d 152, 160 (Tex. App.—Dallas 1996, no writ). In
determining whether an issue has been established as a matter of law, we consider only the
evidence and inferences supporting the jury’s verdict and disregard all evidence and inferences to
the contrary. Id.; see also Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227-28 (Tex. 1990). 
If the record contains any competent evidence supporting the issue, JNOV is inappropriate. Tubb,
862 S.W.2d at 745.
B. Preservation of JNOV Issue on Common Law Fraud
      Brush’s first two points aver in part that the trial court erred by not rendering JNOV on the
issues of common law fraud and damages for such fraud. Appellees respond that Brush has not
properly preserved these points because he did not ask the court to render JNOV on the basis of
common law fraud.
      A motion for JNOV is one of the vehicles by which a party challenges the legal sufficiency
of the evidence to support a jury finding. See Crow v. Burnett, 951 S.W.2d 894, 899 (Tex.
App.—Waco 1997, pet. denied). Brush’s JNOV motion only challenged the jury’s verdict on the
issue of statutory fraud and damages for statutory fraud. It did not address common law fraud. 
Accordingly, Brush cannot challenge the trial court’s refusal to grant JNOV on the basis of
common law fraud because his motion did not ask the trial court to render JNOV on that basis. 
See Estate of Clifton v. Southern Pac. Transp. Co., 709 S.W.2d 636, 639-40 (Tex. 1986); Tex.
R. App. P. 52(a), 49 Tex. B.J. 573 (Tex. 1986, repealed 1997).



      However, Brush argued in a motion for directed verdict that the evidence established common
law fraud and damages for such fraud as a matter of law. This is another appropriate method of
preserving a legal sufficiency challenge. Crow, 951 S.W.2d at 899. The appellate rules require
us to liberally construe the parties’ briefs. Tex. R. App. P. 74(p), 49 Tex. B.J. 580 (Tex. 1986,
repealed 1997). Accordingly, we treat this portion of Brush’s first two points as a claim that the
evidence establishes common law fraud or damages for such fraud as a matter of law.
      The analysis for such a claim is essentially identical to that employed when reviewing the
court’s denial of a JNOV motion. Compare Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989), with Tubb, 862 S.W.2d at 744-45. That is, to determine whether Brush established
common law fraud or damages as a matter of law, we consider only the evidence and inferences
supporting the jury’s verdict and disregard all contrary evidence and inferences. If the record
contains some evidence supporting the verdict, then Brush failed to establish common law fraud
as a matter of law. See Sterner, 767 S.W.2d at 690-91. However, if the record is devoid of
evidence supporting the verdict, then we must examine the entire record to determine whether
Brush established common law fraud as a matter of law. Id. at 690.
C. Factual Sufficiency Challenge
      Brush’s first four points each allege in part that the court erred in denying his motion for 
JNOV because the jury’s answers are “against the great weight and overwhelming preponderance
of evidence.” However, a party is not entitled to JNOV if the verdict has some evidentiary
support, even though the verdict is contrary to the great weight and preponderance of the
evidence. Gulf, Col. & Santa Fe Ry. Co. v. Deen, 158 Tex. 466, 470, 312 S.W.2d 933, 937
(1958); Scharer v. John’s Cars, Inc., 776 S.W.2d 228, 230-31 (Tex. App.—El Paso 1989, writ
denied). Thus, Brush’s JNOV motion did not preserve his factual sufficiency challenge for
appellate review.
      Nevertheless, rule 324(b)(2) and (3) of the Rules of Civil Procedure requires a party to raise
a complaint that the verdict is contrary to the weight and preponderance of the evidence in a
motion for new trial as a prerequisite to asserting the complaint on appeal. Tex. R. Civ. P.
324(b)(2), (3); Crow, 951 S.W.2d at 899. Brush raised these challenges to the jury’s fraud
findings in his motion for new trial. Accordingly, we treat this portion of Brush’s first four points
as a challenge to the factual sufficiency of the evidence to support the jury’s failure to find
common law or statutory fraud or damages for such fraud.
      A factual sufficiency challenge requires us to consider and weigh all the evidence. Dyson v.
Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985); In re King’s Estate, 150 Tex. 662, 664-65, 244
S.W.2d 660, 661 (1951). We will set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Id.
      “The jury is the sole judge of the witnesses’ credibility and the weight to be accorded their
testimony. The jurors may also derive inferences from the evidence and decide between
conflicting inferences. A jury finding based on conflicting evidence and inferences is generally
conclusive.” Libhart v. Copeland, 949 S.W.2d 783, 803 (Tex. App.—Waco 1997, no writ)
(citing Woodlawn Mfg., Inc. v. Robinson, 937 S.W.2d 544, 550 (Tex. App.—Texarkana 1996,
writ denied)).
D. Fraud
      To prove common law fraud, a plaintiff must establish:
      (1)  the defendant made a material representation;
 
      (2)  which was false;
 
      (3)  the defendant made the representation knowing it to be false or made it
recklessly as a positive assertion without any knowledge of its truth;
 
      (4)  the defendant intended that the plaintiff act upon the representation;
 
      (5)  the plaintiff acted in reliance upon the representation; and
 
      (6)  suffered injury as a result.

Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990); Libhart, 949 S.W.2d
at 800-01.
      Section 27.01 of the Business and Commerce Code provides a statutory cause of action for
fraud in real estate and stock transactions. Tex. Bus. & Com. Code Ann. § 27.01 (Vernon
1987). The elements of statutory fraud under section 27.01 are essentially identical to the
elements of common law fraud except that the statute does not require proof of knowledge or
recklessness as a prerequisite to the recovery of actual damages.


 See Swanson v. Schlumberger
Technology Corp., 895 S.W.2d 719, 732 (Tex. App.—Texarkana 1994), rev’d on other grounds,
959 S.W.2d 171 (Tex. 1997); Diversified, Inc. v. Walker, 702 S.W.2d 717, 723 (Tex.
App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.). Accordingly, we will address the legal and
factual sufficiency of the evidence on common law and statutory fraud together.
E. The Pertinent Facts
      Brush alleges that Reata defrauded him by misrepresenting that it held merchantable title to
the Vilas and Jericho leasehold estates and that it owned the mineral estate in the 3,000 acres in
which Brush purchased a twenty percent interest.
      Reata clearly represented in the lease purchase and development agreements covering the
Vilas and Jericho wells that “Reata has had title to the drillsite examined by Its Attorney and is
satisfied that It owns merchantable title to said drillsite.” Concerning the 3,000-acre tract, Reata
informed Brush that “we have added all of the acreage shown on the [accompanying] map so that
we now have approximately 3,000 acres inventory in this area.” Reata referred to the acreage as
“our lease acreage” and made other references in the letter of a similar nature. One and one-half
months later, Reata advised in a letter that “Reata ha[s] leased approximately 3,500 acres of
leasehold in and around our Vilas tract.”
      The record reflects several reasons Brush elected to participate in these ventures with Reata. 
On at least eight different occasions in his testimony, Brush explained that he invested in the Vilas
well because Reata’s repurchase guarantee made it a “riskless investment.” He testified that the
repurchase guarantee “precipitated” him to invest in the Vilas well and that the existence of the
guarantee “encouraged” him to invest, notwithstanding any other considerations.
      Brush testified on several occasions that he relied on the advice of a long-time friend in
making the decision to invest with Reata. He explained that this advice was “one of the principal
reasons” he decided to invest. On direct examination, he testified that he had sold a piece of
property on Grand Cayman in the summer of 1992 for $1,000,000. Brush had purchased this
property in the 1950's for “about $1,600.” He denied that he was looking for a tax shelter for the
proceeds from this sale but conceded on cross-examination that he had considered the tax
advantages offered by the Reata investment when he made the investment.
      Brush testified on direct examination that he relied “in full” on the title representations
contained in the Vilas and Jericho agreements when he invested in those ventures. However, he
qualified this reliance moments later when he responded “I think so” to counsel’s question
regarding whether the representations induced him to invest in the Vilas and Jericho projects. He
stated that he would not have invested with Reata had he known that it was a wholly-owned
subsidiary of Shield. According to Brush, such a corporate structure “raises a red flag because
unless one is used to shield the other from liability, there is basically no reason for that to occur.” 
When cross-examined with prior deposition testimony, Brush conceded that the Reata-Shield
relationship would not have been a consideration in his investment decision.



      Powell testified that Reata acted as Shield’s agent in negotiating the agreements with Brush. 
Appellees presented expert testimony to the effect that such practices are commonplace in the oil
and gas industry. An attorney employed by Reata and Shield primarily for title work testified that
Reata held equitable title to the properties in issue and Shield held legal title to the properties.
      Brush received monthly disbursements for his interests in the Vilas and Jericho wells. 
Although each disbursement check was accompanied by a statement from Shield, Brush explained
that his bookkeeper handled the checks and that he did not “go through” the statements because
he had “no expertise on the charges for maintaining the well” and he had “no reason to doubt”
the accuracy of the statements. Brush received $149,270 in net disbursements.
F. Application of the Law to the Facts
      We assume without deciding that Reata made false representations when it stated that it owned
merchantable title to the Vilas and Jericho leaseholds. See First Am. Title Co. v. Prata, 783
S.W.2d 697, 702-03 (Tex. App.—El Paso 1989, writ denied); Lund v. Emerson, 204 S.W.2d 639,
641 (Tex. Civ. App.—Amarillo 1947, no writ). We will likewise assume that Reata made false
representations when it referred to the 3,000-acre tract as “our lease acreage” and when it stated
“Reata ha[s] leased approximately 3,500 acres of leasehold in and around our Vilas tract.” See
Clem v. Fulgham, 14 S.W.2d 812, 813 (Tex. Comm’n App. 1929, judgm’t adopted); Old Nat’l
Life Ins. Co. v. Bibbs, 184 S.W.2d 313, 316 (Tex. Civ. App.—Austin 1944, writ ref’d w.o.m.).
1. Legal Sufficiency
      Brush had to establish that Reata made a material misrepresentation in order to prevail on
either his common law or statutory fraud claims. A misrepresentation is material if it induces a
party to enter a contract. Marburger v. Seminole Pipeline Co., 957 S.W.2d 82, 86 n.4 (Tex.
App.—Houston [14th Dist.] 1997, pet. denied); Beneficial Personnel Servs. of Tex., Inc. v. Rey,
927 S.W.2d 157, 168 (Tex. App.—El Paso 1996), writ granted w.r.m., 938 S.W.2d 717 (Tex.
1997); American Med. Int’l, Inc. v. Giurintano, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th
Dist.] 1991, no writ). A misrepresentation can be material even though it is not the party’s sole
inducement for entering the contract if the party relied on the misrepresentation. Marburger, 957
S.W.2d at 86 n.4; Miller v. Latham, 276 S.W.2d 858, 866 (Tex. Civ. App.—Amarillo 1954, writ
ref’d n.r.e.).
      Brush testified to several considerations which played a role in his decision to invest with
Reata: the repurchase guarantee, a friend’s advice, tax considerations, and Reata’s title
representations. Although he testified that he relied “in full” on the title representations made in
the Vilas and Jericho agreements, he significantly qualified this reliance when he testified that he
merely thought the representations induced him to invest in those projects. He explained that he
relied on Reata’s misrepresentations of ownership in the 3,000-acre tract in the same manner. 
Disregarding Reata’s title and ownership representations, the remaining considerations constitute
competent evidence on which the jury could decide that Reata’s misrepresentations were
immaterial. See Tubb, 862 S.W.2d at 745. Accordingly, Brush failed to establish as a matter of
law that Reata committed common law or statutory fraud.
2. Factual Sufficiency
      Brush testified that he relied on Reata’s misrepresentations of merchantable title and
ownership when he decided to invest with Reata in the Vilas and Jericho wells and in the 3,000
acres.


 However, Brush qualified this testimony when he explained that he merely thought these
representations had induced him to invest.
      Brush repeatedly emphasized the lack of risk associated with the Vilas investment as a primary
consideration in that investment. The advice of his friend was “one of the principal reasons” he
invested with Reata. Although Brush denied that he was looking for a tax shelter, investing with
Reata offered a tax benefit which would help offset the $998,400 gain he realized on the sale of
his Grand Cayman property.
      This evidence presented the jury with a disputed fact issue concerning whether Reata’s
misrepresentations were material. We will not substitute our judgment for the jury’s on a disputed
fact issue. See Libhart, 949 S.W.2d at 803; Woodlawn Mfg., 937 S.W.2d at 550. We cannot say
that the jury’s failure to find common law or statutory fraud is “so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.” Dyson, 692 S.W.2d at 457.
G. Summary
      Brush failed to establish common law or statutory fraud as a matter of law. The jury’s failure
to find fraud is not contrary to the weight and preponderance of the evidence. Accordingly, we
overrule Brush’s first and third points. Because Brush failed to establish fraud as a matter of law
and because the jury’s verdict is not contrary to the weight and preponderance of the evidence,
Brush is not entitled to damages. Thus, we overrule his second and fourth points.
III. RESCISSION
      Brush argues in his fifth point that the court erred in not granting judgment for rescission of
the parties’ contracts because he established his entitlement to rescission as a matter of law. He
contends in his sixth point that the court erred in not ordering repayment of the considerations he
had paid when he entered those contracts as damages for rescission. Appellees respond that
because Brush did not obtain findings of fact and conclusions of law the findings necessary to
support the judgment are implied. Appellees also claim that Brush is not entitled to rescission
because he failed to establish fraud.
      The parties submitted the issue of rescission to the court for determination as a matter of law
after receipt of the jury’s verdict. When the parties submit a portion of the case to the trial court
separately from the issues submitted to the jury, the trial court’s judgment “implies all necessary
fact-findings in support of its judgment” if findings of fact and conclusions of law are not
requested. Shenandoah Assocs. v. J & K Properties, Inc., 741 S.W.2d 470, 484 (Tex.
App.—Dallas 1987, writ denied) (op. on reh’g); see also Rosestone Properties, Inc. v.
Schliemann, 662 S.W.2d 49, 51 (Tex. App.—San Antonio 1983, writ ref’d n.r.e.). When findings
of fact and conclusions of law are not requested, the judgment must be affirmed if it can be upheld
on any theory of law supported by the evidence. In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984);
Martin v. State, 873 S.W.2d 457, 458 (Tex. App.—Waco 1994, no writ); Schliemann, 662
S.W.2d at 51. Accordingly, we will review the record to determine whether Brush established
his entitlement to rescission as a matter of law. See Bowles v. Reed, 913 S.W.2d 652, 660 (Tex.
App.—Waco 1995, writ denied); see also Schliemann, 662 S.W.2d at 51.
      In a third amended original petition,


 Brush sought rescission as an alternative form of relief
based on Reata’s alleged fraudulent conduct. “Rescission is an equitable remedy and, as a general
rule, the measure of damage is the return of the consideration paid, together with such further
special damage or expense as may have been reasonably incurred by the party wronged on account
of the contract.” Smith v. National Resort Communities, Inc., 585 S.W.2d 655, 660 (Tex. 1979).
      However, if a party seeks to rescind a contract on the basis of fraud but fails to prove a viable
fraud claim, the party is not entitled to rescission of the contract. See Pitman v. Lightfoot, 937
S.W.2d 496, 532 (Tex. App.—San Antonio 1996, writ denied). We have already determined that
Brush failed to prove his fraud claims as a matter of law. Thus, he was not entitled to rescission
of the agreements with Reata. We overrule his fifth and sixth points.
IV. ATTORNEY’S FEES
      Brush avers in his seventh point that the court erred in awarding Reata attorney’s fees for
breach of contract because Reata did not obtain a judgment on this claim. The trial court’s
judgment reads in pertinent part, “Pursuant to the Uniform Declaratory Judgment Act, and the
stipulations and agreements of the parties, the Court hereby awards Reata Oil & Gas Corporation
its reasonable, necessary, just and equitable attorney’s fees and costs.” The court clearly premised
its award of attorney’s fees to Reata on the basis of Reata’s declaratory judgment action, not its
contract claim. Thus, we overrule Brush’s seventh point.
      Brush contends in his eighth point that the court erred in awarding Reata’s attorney’s fees
under the declaratory judgment statute. Brush specifically argues that Reata is not entitled to
attorney’s fees because it obtained no favorable findings on its declaratory judgment action and
because it inappropriately pursued declaratory relief solely as a subterfuge by which it could claim
attorney’s fees.
      A trial court may award just and equitable attorney’s fees to a non-prevailing party pursuant
to the Uniform Declaratory Judgments Act. Maris v. McCraw, 902 S.W.2d 191, 194 (Tex.
App.—Eastland 1995, writ denied); McLendon v. McLendon, 862 S.W.2d 662, 673 (Tex.
App.—Dallas 1993, writ denied); accord Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618, 637 (Tex. 1996) (award of attorney’s fees not dependent on
finding that party “substantially prevailed” in declaratory judgment action). The Act “entrusts
attorney’s fee awards to the trial court’s sound discretion, subject to the requirements that any fees
awarded be reasonable and necessary, which are matters of fact, and to the additional requirements
that fees be equitable and just, which are matters of law.” Bocquet v. Herring, 972 S.W.2d 19,
21 (Tex. 1998).



      A party may not seek declaratory relief to settle issues already pending before a court. BHP
Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990). Thus, “a party cannot bring a
counterclaim for declaratory relief and recover attorney’s fees when the counterclaim seeks
resolution of disputes already pending before the court.” Thomas v. Thomas, 902 S.W.2d 621,
626 (Tex. App.—Austin 1995, writ denied); accord John Chezik Buick Co. v. Friendly Chevrolet
Co., 749 S.W.2d 591, 594-95 (Tex. App.—Dallas 1988, writ denied) (declaratory judgment
counterclaim presenting no new controversy and “brought solely to pave an avenue to attorney
fees” is improper). However, this rule applies only if the matter is already pending when a party
files its declaratory judgment action. Thomas, 902 S.W.2d at 626.
      We recently reversed an attorney’s fee award premised on the Declaratory Judgments Act in
a suit involving a title dispute. See McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.,
962 S.W.2d 676, 685 (Tex. App.—Waco 1998, pet. denied). In McRae Exploration, the plaintiffs
brought a trespass to try title action concerning certain mineral interests which both they and the
defendants claimed under competing deeds. The jury found among other things that the plaintiffs’
predecessors in title were bona fide purchasers. Pursuant to the verdict, the trial court rendered
judgment awarding full legal and equitable title to the plaintiffs, declaring the deed under which
the defendants claimed title void as to the property in dispute, and awarding attorney’s fees
pursuant to the Declaratory Judgment Act. Id. at 678-79.
      We affirmed the judgment as to the title question but reversed the attorney’s fee award. Id.
at 685. We reversed the attorney’s fee award because the suit before us:
involve[d] a title dispute between competing deeds. It d[id] not involve the construction
or validity of the deeds. As such it [wa]s an action for trespass to try title and not for
declaratory judgment.

Id.
      The present suit differs significantly from the McRae Exploration case. In this case, the
parties are disputing the terms of their agreements. Thus, the present suit required the court to
construe the parties’ agreements. The Act on its face provides that a party may seek declaratory
relief involving “any question of construction . . . arising under [a written contract]” “either
before or after there has been a breach.” Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (Vernon
1997). A court can declare the rights and status of the parties to a contract “whether or not further
relief is or could be claimed.” Id. § 37.003(a). “The fact that other issues in the general
controversy between the parties remain unresolved by the . . . declaratory judgment does not
deprive the trial court of the power and discretion to render such a judgment.” Standard Fire Ins.
Co. v. Fraiman, 514 S.W.2d 343, 346 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ). 
We must liberally construe the Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon
1997).
      As discussed at the beginning of this opinion, Reata and Shield actually filed their petition for
declaratory relief three weeks before Brush filed his lawsuit. They chose to institute this
proceeding as a declaratory judgment action, which they could properly do under the terms of the
Act. We decline to hold that if a trial court chooses to realign as a defendant a plaintiff properly
seeking declaratory relief, the former plaintiff forfeits its rights under the Act merely because it
must first respond to the former defendant’s cause of action with a responsive pleading before it
can assert its own request for affirmative declaratory relief by way of a counter-claim. In this
case, the trial court’s award of attorney’s fees pursuant to the Act clearly reflects that the court
did not intend to deny Reata’s declaratory judgment action when it realigned the parties. Thus,
Brush has not demonstrated that Appellees pursued their declaratory judgment claim solely to
recover attorney’s fees under the statute. See Thomas, 902 S.W.2d at 626.
      The parties stipulated as to what reasonable and necessary attorney’s fees would be for the
prevailing party. Reata properly sought declaratory relief. Thus, the record does not demonstrate
an abuse of discretion on the part of the trial court in awarding attorney’s fees to Reata, even if
Reata did not ultimately prevail on its request for declaratory relief. See Barshop, 925 S.W.2d
at 637; Maris, 902 S.W.2d at 194; McLendon, 862 S.W.2d at 673. Accordingly, we overrule
Brush’s eighth point.
      We affirm the judgment.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice

Before Chief Justice Davis
      Justice Cummings and
      Justice Vance
      (Justice Vance dissenting)
Affirmed
Opinion delivered and filed December 16, 1998
Publish